UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DONALD MCCORMACK,

                Plaintiff,

    v.

JO ANNE BARNHART,
Commissioner of Social Security,

                Defendant.

No. CV05-6066

OPINION AND ORDER

**MOSMAN, J.,**

    Donald McCormack brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Social Security Commissioner on the grounds that the Administrative Law Judge ("ALJ") improperly (1) evaluated the opinions of the treating psychologist, Dr. Schweitzer, treating physician, Dr. Herring, and examining therapist, Dr. Mihaloew; (2) evaluated his testimony and the testimony of his lay witness, Anita Russell; and (3) found him not disabled at Step Five.  Before the court is ALJ William Phillip Horton's final agency decision, which the parties agree should be reversed and remanded.  However, the Commissioner requests a remand for further proceedings while Mr. McCormack requests a remand for an immediate award of benefits.  For the reasons set forth below, the court **REVERSES** the decision of the ALJ and **REMANDS** for further administrative proceedings, but only to determine the actual date of onset of disability for an immediate award of benefits.  To reach this conclusion it is unnecessary to consider Mr. McCormack's second contention.

ADMINISTRATIVE HISTORY

PAGE 1 - OPINION AND ORDER

Mr. McCormack has a college education and graduated from dental school with past work experience as a dentist. As the result of persistent hand tremors, Mr. McCormack stopped working in January, 2000. He filed his applications for social security benefits in May of 2000 at the age of 44, alleging disability due to essential tremor, asthma, and social phobia. Twice in hearings before an ALJ, Mr. McCormack has been found not disabled as defined in the Social Security Act.

The second hearing was conducted on March 3, 2004, and included the testimony of a vocational expert ("VE"). The ALJ applied the required five-step process to determine if Mr. McCormack was disabled. The ALJ found that (1) Mr. McCormack had not engaged in substantial gainful activity since the alleged onset of disability; (2) Mr. McCormack had severe impairments; and (3) Mr. McCormack's impairments did not meet or equal the requirements of a listed impairment.

As a result of proceeding past Step Three, the ALJ assessed Mr. McCormack's residual functional capacity ("RFC") and found that he could "work at the light exertional level or less; [is] unable to perform fine manipulation but able to perform gross motor functions; . . . need[s] to avoid public jobs; and [is] limited to minimal interaction with co-workers and supervisors." Tr. 202.[1] Thus, at Step Four, the ALJ decided that Mr. McCormack could not perform his past relevant work. Finally, at Step Five, the ALJ determined via the testimony of the VE that Mr. McCormack could work as a labeler (light, unskilled), and a marking clerk (light, unskilled). Tr. 203. As a result of this determination, the ALJ found Mr. McCormack not disabled at Step Five.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

However, in reaching that decision, both parties have agreed that the ALJ failed to give clear and convincing reasons for rejecting the opinion of treating psychologist Steve Schweitzer, treating physician Mark Herring, and examining therapist Dr. Mihaloew.

## SUMMARY OF MEDICAL FINDINGS

On January 5, 2000, Dr. Wynn diagnosed Mr. McCormack with a central tremor and significant psychosocial stressors. Dr. Wynn further stated that the patient denied any new medical problems, thus Mr. McCormack's visit was in regard to his tremor and sleep problem. Depression and anxiety are only mentioned when Dr. Wynn notes that "it is entirely possible that he may develop some anxiety and/or depression regarding his problem. . . ." Tr. 138-39.

On February 14, 2000, Dr. Herring diagnosed Mr. McCormack with a tremor and left thigh numbness. Dr. Herring also noted that Mr. McCormack "is a pleasant and cooperative gentleman who is in no distress." Mr. McCormack mentioned a history of depression but did not complain about it at that time. Tr. 180-81.

On July 20, 2000, Dr. Sjodin diagnosed Mr. McCormack with social phobia and essential tremor. This diagnosis was only per Mr. McCormack's report and history as no medical records were available for review by Dr. Sjodin. Dr. Sjodin found no evidence of a mood disorder and mentioned that "there did not appear to be an underlying anxiety disorder." Tr. 145 Instead, Dr. Sjodin noted that Mr. McCormack's anxiety seems limited to social situations and that it is claimed by Mr. McCormack to be the main source of his problem. Morever, Mr. McCormack claims at this meeting that his mood is good, that he has not been suicidal in years, and that depression is not a current problem for him. Tr. 140-45.

On February 19, 2001, Dr. Mihaloew diagnosed Mr. McCormack with avoidant

PAGE 3 - OPINION AND ORDER

personality disorder and social phobia.  Dr. Mihaloew opined that Mr. McCormack's behaviors are "exceedingly debilitative to his professional . . . relations" and that "overall, Mr. McCormack is seriously impaired in terms of his general life process."  Tr. 185, 382.

From August 10 to October 29, 2001, Dr. Schweitzer saw Mr. McCormack numerous times.  He diagnosed him with depression, anxiety, and social phobia.  Also, Dr. Schweitzer specifically noticed that Mr. McCormack's depression had worsened by the end of this period.  Tr. 170-71.

On October 9, 2001, Dr. Herring noted that in his opinion Mr. McCormack was "rendered permanently and totally disabled on the basis of his tremor."  Tr. 176.  Furthermore, he stated that the tremor combined with dysthymia (mild chronic depression) with a pseudodementia of depression formed a "constellation of symptoms [which] renders him incapable of sustaining gainful employment even outside of the field of dentistry."  *Id*.

On April 21, 2002, Dr. Schweitzer diagnosed Mr. McCormack with social phobia exacerbated by essential tremor and a major depressive episode.  Dr. Schweitzer opined that Mr. McCormack is "clearly disabled at this time [but] I believe he would be happy to work in the future when he has overcome his social phobia and depression."  Tr. 374-75.  Finally, in a letter written more than a year after Mr. McCormack's last visit but referring to Mr. McCormack's condition at that time, Dr. Schweitzer remarked that Mr. McCormack's "ability to engage in social interaction was extremely limited, limiting him to situations where he could only work in isolation . . . and given his state of depression" he doubted Mr. McCormack "could successfully adapt to new situations."  Tr. 445.

These diagnoses evince a gradually worsening condition.  Dr. Schweitzer specifically

notes this trend when he concluded that Mr. McCormack's depression had worsened from August of 2001 to October of 2001. Tr. 170. To draw a starker contrast, Mr. McCormack stated in July of 2000 to Dr. Sjodin that depression was not a current problem for him and that his mood was good, whereas in April of 2002 he is characterized by Dr. Schweitzer as being in the midst of a major depressive episode. Tr. 141, 374.

## LEGAL STANDARD

If the Commissioner proceeds beyond Step Three in the five step process, she must assess the claimant's RFC. The claimant's RFC is an assessment of the sustained, work-related activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 416.945(a). In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987); 20 C.F.R. § 416.920(e). If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

## DISCUSSION

According to sentence four of 42 U.S.C. § 405(g), it is appropriate to remand a case in conjunction with a judgment affirming, modifying, or reversing the Commissioner's decision. Ordinarily, the decision whether to remand for further proceedings or simply award benefits is within the court's discretion. *Ramirez v. Shalala*, 8 F.3d 1449, 1455 (9th Cir. 1993). Remand for further proceedings "is appropriate 'where additional administrative proceedings could remedy defects'; but where remand would only delay the receipt of benefits," the court should enter judgment for the claimant. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989), quoting *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985). Courts generally award benefits "when no useful purpose would be served by further administrative proceedings" or "when the record has been fully developed and there is not sufficient evidence to support the ALJ's conclusion." *See Rodriguez*, 876 F.2d at 763.

Evidence should be credited and an immediate award of benefits directed when "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). This three-factor test is known as the *Smolen* test.

    A.    Dr. Herring's, Dr. Schweitzer's, and Dr. Mihaloew's opinions

While the Commissioner concedes that the ALJ did not provide legally sufficient reasons for rejecting the opinions of these doctors, she argues that said opinions should not be fully credited because there are unresolved issues due to conflicting medical opinions regarding Mr. McCormack's condition. Thus, there should be a remand for further proceedings to weigh or

resolve any contradictory opinions   In addition, the Commissioner argues that even if Dr. Herring's, Dr. Schweitzer's, Dr. Mihaloew's opinions are fully credited, a finding of disability is not the only outcome supported by the record.  The Commissioner contends that this is due to the fact that legal disability has a medical and vocational component and that a doctor's opinion of disability is not a legal determination.  *See Harman*, 211 F.3d at 1180.  I believe both of these arguments fail.  Because both parties agree that the ALJ failed to provide legally sufficient reasons for rejecting the opinions of aforementioned doctors, factor one of the *Smolen* test is fulfilled and the analysis begins with respect to the Commissioner's arguments at factor two.

        1.        Conflicting or contradictory medical opinions

It is true that some of the doctors who examined Mr. McCormack came to medical conclusions different from those of Drs. Herring, Schweitzer and Mihaloew, however, these conclusions do not in any way conflict.  This is because those doctors whose respective opinions differ from the opinions of Dr. Herring and Dr. Schweitzer examined Mr. McCormack at much earlier dates. Thus, Dr. Wynn's view of Mr. McCormack's condition in January of 2000 is in no way in conflict with Dr. Schweitzer's view of Mr. McCormack's condition in the fall of 2001 or the spring of 2002.  Mr. McCormack's condition could have very easily changed over a couple months let alone a couple years.  Review of the summarized chronology of medical findings to compare the diagnoses in early 2000 with the later diagnoses of Dr. Herring and Dr. Schweitzer helps to illustrate this point.  It appears Mr. McCormack's condition continually worsened as time progressed.  As a result, there are no unresolved issues due to conflicting medical opinions and Dr. Herring's, Dr. Schweitzer's, Dr. Mihaloew's opinions should be fully credited.

        2.        Legal disability

Fully crediting the opinions of Dr. Herring, Dr. Schweitzer, and Dr. Mihaloew satisfies the medical component of legal disability. The legal consequence of accepting these opinions also satisfies the vocational component. At the hearing, Mr. McCormack's attorney asked the VE to assume statements by Dr. Schweitzer about Mr. McCormack were true of a hypothetical person with same age, education, and background. Tr. 480. These statements were that Mr. McCormack "often lacks the ability to sustain focused attention long enough to complete takes commonly found in work settings" and that "any setting working with other people would generate sufficient anxiety in him to render him non-functioning." Tr. 375. Mr. McCormack's attorney then asked that if these statements were true, "would that preclude [his] ability to engage in competitive employment," and the VE answered "yes, it would." Tr. 480.

Moreover, the VE also testified that a hypothetical individual who had the mental limitations as set forth by Dr. Mihaloew's description of Mr. McCormack would be unable to perform "any types [sic] of work that [he] could identity." Tr. 479. These mental limitations include avoidant personality disorder, dependant personality disorder, post-traumatic stress response, and social phobia. More specifically, on the Mental RFC assessment form, Dr. Mihaloew rated Mr. McCormack's limitations in two areas as severe, "a limitation which precludes the individual's ability to function in the designated area." Tr. 182. These limitations were "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" and "the ability to interact [with the] general public." Tr. 183-84. Dr. Mihaloew also rated Mr. McCormack's limitations in seven other areas on the Mental RFC as moderately severe, "an impairment which precludes the individual's ability to

PAGE 8 - OPINION AND ORDER

perform the designated activity on a . . . sustained basis for 8 hours per day, 5 days per week." Tr. 182. Importantly, Dr. Schweitzer specifically concurred regarding Dr. Mihaloew's diagnosis, mentioning that it "reflect[s] Mr. McCormack's condition" and only disagreeing where it did not also mention Mr. McCormack's severe depression. Tr. 188

In addition, had a hypothetical been posed to the VE regarding Dr. Herring's determinations that Mr. McCormack's tremor combined with dysthmic disorder with a pseudodementia of depression left him "incapable of sustaining gainful employment", it appears equally likely the VE would have been unable to find suitable employment for Mr. McCormack. Tr. 176. Thus, if the opinions of the various doctors were fully credited, the ALJ would be required to find Mr. McCormack disabled.

### 3. Application of the *Smolen* test

Both parties agree that factor one of the *Smolen* test, that the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Dr. Herring, Dr. Schweitzer, and Dr. Mihaloew, is satisfied. Factor two is satisfied because there are no outstanding issues that must be resolved and a determination of disability can be made on the basis of this evidence. Finally, the third factor is satisfied because if the opinions of Mr. McCormack's doctors are fully credited, a VE would be unable to identify any possible employment for Mr. McCormack. As a result, both the medical and vocational component of the legal definition of disability would be satisfied. Consequently, an immediate award of benefits is in order once the date of onset is determined.

### B. The date of onset of disability

Because neither party explicitly broaches this subject in their briefs to the court it is

unclear whether Mr. McCormack could be considered legally disabled at the time he claims onset. As a result, I believe further proceedings are required, but only to determine the date of onset of disability. The early medical evaluations of Mr. McCormack paint a man less crippled by depression and anxiety than the later evaluations by Dr. Herring, Dr. Schweitzer, and Dr. Mihaloew.

## CONCLUSION

In this case, the ALJ failed to give clear and convincing reasons for not fully crediting the uncontradicted opinions of some of Mr. McCormack's doctors. The legal consequence of fully crediting these opinions is a finding of disability, however, the date of onset is unclear from the record. Therefore, the court REVERSES and REMANDS to the ALJ with instructions to (1) conduct such administrative proceedings as necessary to determine Mr. McCormack's date of onset of disability, and (2) immediately award benefits to Mr. McCormack once the date of onset is established.

IT IS SO ORDERED.

DATED this ___6th___ day of _____February_____, 2006.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court